KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
ELIZABETH K. MCCLOSKEY - # 268184
emccloskey@keker.com
BAILEY W. HEAPS - # 295870
bheaps@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiffs
JASON BLESSING and REHMANN RAYANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JASON BLESSING and REHMANN RAYANI, | Case No. |
| Plaintiffs, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| PLEX SYSTEMS, INC. and PLEX SYSTEMS HOLDINGS, INC., | |
| Defendants. | |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Plaintiffs Jason Blessing and Rehmann Rayani ("Plaintiffs") allege as follows for their Complaint against Defendants Plex Systems, Inc. ("Plex Systems") and Plex Systems Holdings, Inc. ("Plex Holdings" and, collectively with Plex Systems, "Plex").  Plaintiffs hereby state and allege as follows:

**INTRODUCTION**

1.      Plex is a leading provider of cloud-based management software for manufacturing companies.  Plex has grown significantly since its founding in 1995, transforming from a bootstrapped IT project into a billion-dollar private equity darling.

2.      Starting no later than early 2020, Plex and its latest private equity owner, Francisco Partners, were engaged in negotiations with a large, publicly traded industrial automation company, Rockwell Automation ("Rockwell"), regarding a potential acquisition by Rockwell of Plex.

3.      As a result of those negotiations, in June 2021, Rockwell announced it had acquired Plex for $2.2 billion.  The sale should have brought tremendous returns for all of Plex's stockholders.  Yet in the months leading up to the acquisition's consummation, Plex and Francisco Partners carried out a scheme that significantly enlarged their share of the proceeds—at the expense of other, long-time company stockholders, including Plex's own former Chief Executive Officer.

4.      Specifically, in March 2021, Plex's Chief Financial Officer contacted certain stockholders, including former-CEO Jason Blessing and former-Vice President Rehmann Rayani, to announce a tender offer set to close the next month.  A tender offer is a company's solicitation to its shareholders, presenting an opportunity to sell their stock back to the company at a specific price during a specific time.  To Blessing and Rayani, the offer appeared to be a well-earned and long-awaited opportunity at liquidity; Plex, like most privately held firms, did not often make such offers and this was the first such opportunity for liquidity since Blessing and Rayani were hired by Plex in 2013 and 2014, respectively.

5.      Blessing and Rayani could not have known then that Plex's offer was based on a lie.  Only later did they learn that Plex's tender offer disclosures had been materially false and

1

COMPLAINT
Case No. _____

1717724

1    misleading:  Rather than disclosing that Plex and Rockwell were discussing an acquisition of Plex

2    by Rockwell, Plex affirmatively and falsely disclosed ██████████ : ████████████████████

3    ███████████████████████████████████████████████████████████

4    ██.”  Plex thus represented that it was worth just $██████ and priced its shares accordingly,

5    representing to its shareholders that ████████████████████████████, despite knowing that

6    its valuation was much higher, as reflected by the sale just two months later for $2.2 billion.

7          6.      Both Blessing and Rayani, relying on their former company to be forthright,

8    agreed to sell their outstanding shares back to the company.  But in doing so in April 2021, rather

9    than waiting two months for the Rockwell acquisition to be announced, Blessing's and Rayani's

10   proceeds were ████████ dollars less than what they unquestionably would have been had Plex

11   not misled them.

12         7.      The relief sought here is simple: Blessing and Rayani should be made whole and

13   provided the profits they would have made had they not sold their Plex stock during the

14   company's misleading and fraudulent tender offer but rather sold in connection with Rockwell's

15   acquisition.  The windfall that improperly inured to the benefit of Plex's ownership, including

16   Francisco Partners, should be restored to shareholders, like Blessing and Rayani, who were

17   deprived of the fulsome disclosure they were due, under the law, during the tender offer.

18                                   **THE PARTIES**

19         8.      Plaintiff Jason Blessing is a corporate executive and entrepreneur and the former

20   CEO of Plex.  Blessing currently resides in Danville, California.

21         9.      Plaintiff Rehmann Rayani is a corporate executive and entrepreneur and a former

22   Vice President of Plex.  Rayani currently resides in Toronto, Ontario.

23         10.     Defendant Plex Systems, Inc., is a Delaware Corporation with its principal place of

24   business in Troy, Michigan.

25         11.     Defendant Plex Systems Holdings, Inc., is a Delaware Corporation with its

26   principal place of business in Troy, Michigan.

27         12.     Plaintiffs are informed and believe that each Defendant acted in all respects

28   pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business

COMPLAINT
Case No. _____

1717724

1    plan, or policy in all respects pertinent hereto, and that the acts of each Defendant are legally

2    attributable to each of the other Defendants.

3    **JURISDICTION AND VENUE**

4    13.    This Court has jurisdiction pursuant 28 U.S.C. § 1331 because this civil action

5    arises under the laws of the United States.  Furthermore, jurisdiction is proper under § 1332(a),

6    because the parties are residents of different states and/or foreign countries, and the amount in

7    controversy exceeds $75,000.

8    14.    This Court has personal jurisdiction over Defendants by virtue of their sufficient

9    minimum contacts with this forum as detailed herein.  Additionally, Plex maintains an office in

10   Irvine, California.  Plex Systems has filed a Statement and Designation by Foreign Corporation

11   with the California Secretary of State, electing a California-based agent for service of process.

12   15.    Venue is proper in this judicial district, because a substantial part of the events or

13   omissions giving rise to the claim occurred here.

14   **FACTUAL ALLEGATIONS**

15   **A.    Plex Grows to Billion-Dollar Industry Leader.**

16   16.    Plex was founded as Plexus Systems in 1995.  As a software-as-a-service or

17   "SaaS" business, Plex offers a cloud-based Enterprise Resource Planning ("ERP") program to

18   manufacturing companies.  Plex markets its Plex Smart Manufacturing Platform as "connect[ing]

19   every manufacturing operation in the cloud for maximum efficiency, productivity and visibility,

20   while supporting continuous innovation."

21   17.    Plex has grown significantly since its founding and has changed ownership several

22   times along the way.  In 2006, Apax Partners, a private equity investment group, obtained a

23   majority interest in Plex.

24   18.    Between 2007 and 2012, Plex's revenues and headcount tripled, culminating in a

25   second acquisition in June 2012, this time by Francisco Partners, another private equity firm.

26   19.    Plex continued to accept outside investments in the years that followed, with Accel

27   Partners investing $30 million in December 2012 and T. Rowe Price leading a $50 million

28   funding round in June 2014.

3

COMPLAINT
Case No. _____

1717724

20.     In February 2021, Plex completed a high-profile acquisition of Kors Engineering, a leading provider of plant floor connectivity and manufacturing process automation software.

**B.     Blessing and Rayani Lead Plex's Growth and Acquire Significant Ownership Stake in the Company.**

21.     Shortly after Francisco Partners acquired Plex in 2012, Plex hired Jason Blessing to serve as its CEO.  Blessing had previously served in senior roles at PeopleSoft, Oracle, and Taleo.  After his first year at Plex, Blessing worked out of the company's (now former) office in Pleasanton, California.

22.     In nearly five years as Plex's CEO, Blessing transformed Plex into a more commercially oriented company, significantly scaled revenues and enterprise value, and raised the company's profile in the manufacturing and software sectors.  Blessing departed Plex at the end of 2017 and became CEO at Model N, a cloud-based revenue management solution for healthcare companies, in 2018.

23.     At the time Blessing departed Plex, he owned 2,333,493 shares of Plex's common stock.

24.     Rehmann Rayani joined Plex in 2014 as Director of Corporate Strategy.  He received several promotions, first to Senior Director of Corporate Strategy, then to Vice President of Corporate Strategy, and finally to Vice President and General Manager of the DemandCaster Business Unit, before leaving the company in 2018 to join Blessing at Model N.  Rayani serves as Model N's Chief Strategy Officer.

25.     Shortly after Rayani departed Plex, he exercised options to purchase 200,000 shares of Plex's common stock.

**C.     Plex Vastly Understates Company's Value and Misstates its Acquisition Prospects in Tender Offer to Stockholders, Including Blessing and Rayani.**

26.     On March 10, 2021, Plex's Chief Financial Officer, Don Clarke, e-mailed shareholders, including Blessing (then working and living in the San Francisco Bay Area) and Rayani, "to let [them] know that Plex will launch a tender offer for its outstanding common

4

COMPLAINT
Case No. _____

1717724

shares." A tender offer is a company's solicitation to its shareholders, presenting them with the opportunity to tender their stock for sale back to the company at a specific price during a specific time. Tender offers are particularly valuable when made by a privately held company, because there is otherwise little or no way to sell shares of such stock.

27.     Blessing and Rayani welcomed the announcement, as Plex—like other private companies—did not often provide liquidity events. The tender offer represented a valuable opportunity to monetize the stock that Blessing and Rayani had been holding for several years. At the same time, Blessing and Rayani were in no rush to unload their Plex stock: both were fortunate not to need cash immediately. They viewed their shares as long-term assets that they would part with only if the terms were right.

28.     As part of its tender offer, Plex informed stockholders that the company was "███████████████████████████████████████████████████████ ████████." Plex also indicated that it was hoping to clean up its cap table. Plex announced that the tender offer would run through April 8, 2021.

29.     Plex offered to buy or terminate shares for $███ each. It informed shareholders that there were ████████ total shares outstanding, indicating an enterprise value for Plex of around $████████.

30.     Critically, Plex represented in its offering documents that ████████████ ████████████████████████████████████████████████████████████████████ ████." This representation was knowingly false.

31.     In fact, however, Plex's valuation was greater than $2 billion. And its acquisition by an industrial giant was imminent. Taken together, Plex's statements that it "██████████ ████████████████" and "████████████████████████████████████████" created the false and misleading impression that a billion-dollar, blockbuster acquisition was not in the offing, when in fact it was just two months from being announced.

32.     Since at least early 2020, Plex had been discussing a potential partnership with Rockwell Automation, a publicly traded industrial automation and information technology company with tens of thousands of employees, billions of dollars in annual revenue, and a market

COMPLAINT
Case No. _____

1    cap greater than $30 billion.

2         33.    Plex and Rockwell continued to discuss an acquisition in 2020 and 2021.  In fact,

3    in March and April 2021, at the same time the tender offer was pending, Plex and Rockwell were

4    in the midst of discussions about an acquisition of the former by the latter.

5         34.    In June 2021, just two months after Plaintiffs sold their shares to Plex, Plex and

6    Rockwell announced that Rockwell would acquire Plex for $2.22 billion, with the deal to close by

7    September 2021.  Coverage of the merger announcement touted that "Plex will definitely benefit

8    from this [deal], especially as it will expedite their entry into new verticals and will expand their

9    geographic coverage and market penetration," and that "the acquisition is expected to boost

10   Rockwell's operating margins immediately."  On a June 25, 2021 investor call, the companies

11   revealed that Rockwell had been looking at Plex for "quite some time."

12        35.    Yet in March and April, when Blessing and Rayani had to decide whether to

13   accept Rockwell's tender offer, they did not know—and, indeed, could not have known—that the

14   Rockwell acquisition was imminent.  Nor were Blessing and Rayani aware that Plex's valuation

15   was more than ████ times what Plex had included in its offering documents.

16        36.    Blessing and Rayani therefore accepted Plex's tender offer, relying on Plex's

17   representations about the company's valuation and acquisition potential.  Blessing agreed on

18   March 24, 2021, to tender 2,333,493 shares and to receive $████████.  Rayani agreed on

19   April 1, 2021, to tender his 200,000 shares and to receive $█████.

20        37.    Neither Blessing nor Rayani would have sold their shares had they known that

21   Rockwell was attempting to purchase Plex, that Plex was considering another liquidity event, or

22   that Plex was worth far more than $███████.  Had they not relied upon Plex's representations

23   and held on to their Plex shares until the Rockwell acquisition was announced, Blessing's stake in

24   Plex would have been worth more than $███████ and Rayani's would have been valued at close

25   to $███████.  Had Blessing and Rayani not sold their shares during the tender offer, they

26   would have had an opportunity to do so—or to receive fair compensation for those shares—

27   during or after the Rockwell acquisition.

28        38.    The tenders closed on April 15, 2021.  Plex announced the Rockwell deal just 71

6

COMPLAINT
Case No. _____

1717724

days later.  Blessing and Rayani were blindsided by the acquisition news and shocked to learn

that they had been lied to by the company they had helped to build.  Blessing's and Rayani's

attempts to resolve their disagreement with Plex were not successful.  This suit follows.

## COUNT ONE
### (Violation of § 10(b) and Rule 10b–5 of the Exchange Act)

39.    Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

40.    Plex made material misrepresentations and omissions in representing the

company's valuation and in indicating that ███████████████████████;

41.    Plex made the aforementioned material misrepresentations and omissions with

knowledge that they were false and/or misleading;

42.    Plex's material misrepresentations and/or omissions were made in connection with

the purchase and sale of a security, *i.e.*, shares of the company's stock sold during its March-April

2021 tender offer;

43.    Blessing and Rayani relied on Plex's material misrepresentations and omissions

when they elected to accept the tender offer and sell their Plex shares to the company;

44.    Blessing and Rayani suffered economic loss as a result of Plex's material

misrepresentations and omissions, as declining the tender offer and waiting to sell Plex's common

stock during or after Rockwell's acquisition of Plex would have resulted in more than $██████

in additional profits;

45.    Plex's material misrepresentations and omissions were a substantial cause of

Blessing's and Rayani's economic loss.

## COUNT TWO
### (Violation of Exchange Act § 14(e))

46.    Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

47.    Plex made material misrepresentations and omissions in representing the

company's valuation and in indicating that ██████████████;

48.    Plex's material misrepresentations and omissions were made in connection with a

tender offer.

COMPLAINT
Case No. _____

1717724

## COUNT THREE
### (Fraud)

49.    Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

50.    Plex made material misrepresentations and omissions in representing the company's valuation and in indicating that ████████████████████████;

51.    Plex made the aforementioned material misrepresentations and omissions with knowledge that they were false and misleading;

52.    Plex made the aforementioned material misrepresentations and omissions with the intent to cause recipients of the tender offer, including Blessing and Rayani, to rely upon them;

53.    Blessing and Rayani did in fact justifiably rely on Plex's material misrepresentations and omissions when they elected to accept the tender offer and sell their Plex shares to the company;

54.    Blessing and Rayani suffered damage as a result of Plex's material misrepresentations and omissions, as declining the tender offer and waiting to sell Plex's common stock during Rockwell's acquisition of Plex would have resulted in more than $██████ in additional profits.

## COUNT FOUR
### (Fraudulent Concealment)

55.    Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

56.    Plex made material misrepresentations and omissions in representing the company's valuation and in indicating that ███████████████████;

57.    Plex made the aforementioned material misrepresentations and omissions with knowledge that they were false and misleading;

58.    Plex made the aforementioned material misrepresentations and omissions with the intent to cause recipients of the tender offer, including Blessing and Rayani, to rely upon them;

59.    Blessing and Rayani did in fact justifiably rely on Plex's material misrepresentations and omissions when they elected to accept the tender offer and sell their Plex shares to the company;

COMPLAINT
Case No. _____

1717724

60.     Blessing and Rayani suffered damage as a result of Plex's material misrepresentations and omissions, as declining the tender offer and waiting to sell Plex's common stock during Rockwell's acquisition of Plex would have resulted in more than $_____ in additional profits.

## COUNT FIVE
### (Fraud in the Inducement)

61.     Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

62.     Plex made material misrepresentations and omissions in representing the company's valuation and in indicating that _____;

63.     Plex made the aforementioned material misrepresentations and omissions with knowledge that they were false and misleading;

64.      Plex made the aforementioned material misrepresentations and omissions with the intent to cause recipients of the tender offer, including Blessing and Rayani, to rely upon them;

65.     Blessing and Rayani did in fact justifiably rely on Plex's material misrepresentations and omissions when they elected to accept the tender offer and sell their Plex shares to the company;

66.     Blessing and Rayani suffered damage as a result of Plex's material misrepresentations and omissions, as declining the tender offer and waiting to sell Plex's common stock during Rockwell's acquisition of Plex would have resulted in more than $_____ in additional profits.

## COUNT SIX
### (Negligent Misrepresentation)

67.     Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

68.     Plex made material misrepresentations in representing the company's valuation and in indicating that _____;

69.     Plex lacked reasonable grounds to believe its material misrepresentations to be true;

9

COMPLAINT
Case No. _____

1717724

70.   Plex made the aforementioned material misrepresentations with the intent to cause recipients of the tender offer, including Blessing and Rayani, to rely upon them;

71.   Blessing and Rayani did not know that Plex's material misrepresentations were false and misleading;

72.   Blessing and Rayani justifiably relied on Plex's material misrepresentations and omissions when they elected to accept the tender offer and sell their Plex shares to the company;

73.   Blessing and Rayani suffered damage as a result of Plex's material misrepresentations, as declining the tender offer and waiting to sell Plex's common stock during Rockwell's acquisition of Plex would have resulted in more than $▮▮▮▮ in additional profits.

## COUNT SEVEN
### (Unjust Enrichment)

74.   Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

75.   Plex has been unjustly enriched in retaining the benefits derived from its fraudulent tender offer purchases from Blessing and Rayani.  Retention of those benefits is unjust and inequitable under the circumstances, because Plex induced those transactions via material misrepresentations and omissions.  Plex's actions caused injuries to Blessing and Rayani because they would not have accepted the tender offer had they known that Rockwell's acquisition of Plex was imminent.

76.   Because Plex's retention of the non-gratuitous benefits conferred on them by Blessing and Rayani is unjust and unreasonable, Plex must pay restitution to Blessing and Rayani for their unjust enrichment.

## COUNT EIGHT
### (Breach of Contract)

77.   Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

78.   Blessing's and Rayani's acceptance of the tender offer created a valid and binding contract between each of Blessing and Rayani, on the one hand, and Plex, on the other.

79.   Blessing and Rayani performed under their contracts, insofar as they tendered their shares of Plex common stock to the company.

COMPLAINT
Case No. _____

1717724

80.     Plex breached its contracts with Blessing and Rayani by disregarding the warranties and representations included therein.  The tender offer included a warranty that ███ ████████████████████████████████ and represented that ██████████████████ ████████.

81.     Blessing and Rayani suffered damage as a result of Plex's breach, as their reliance on Plex's representations and warranties induced them to accept the offer instead of waiting to sell Plex's common stock during Rockwell's acquisition, when their shares would have been worth at least $██████ more.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

1.     For judgment in Plaintiffs' favor and against Defendants on all causes of action alleged herein;

2.     For damages in an amount to be proven at trial;

3.     For restitution;

4.     For recission;

5.     For preliminary and permanent injunctive relief;

6.     For imposition of a constructive trust;

7.     For exemplary damages;

8.     For costs of suit incurred herein;

9.     For pre-judgment and post-judgment interest;

10.    For attorneys' fees and costs;

11.    For declaratory relief; and,

12.    For such other and further relief as the Court may deem to be just and proper.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all issues so triable.

COMPLAINT
Case No. _____

1717724

1

Dated:  August 2, 2021                                          KEKER, VAN NEST & PETERS LLP

2

3                                                        By:     s/John W. Keker
                                                                 JOHN W. KEKER
4                                                                R. JAMES SLAUGHTER
                                                                 ELIZABETH K. MCCLOSKEY
5                                                                BAILEY W. HEAPS

6                                                                Attorneys for Plaintiffs
                                                                 JASON BLESSING and REHMANN
7                                                                RAYANI

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12
COMPLAINT
Case No. _____

1717724