1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON BLESSING, et al.,

              Plaintiffs,

     v.

PLEX SYSTEMS, INC., et al.,

              Defendants.

Case No. 21-cv-05951-PJH

**ORDER DENYING MOTION TO DISMISS AND MOTIONS TO SEAL**

Re: Dkt. Nos. 2, 24, 25, 28, 38

Defendants' motion to dismiss came on for hearing before this court on November 4, 2021. Plaintiffs Jason Blessing and Rehmann Reyani appeared through their counsel, Bailey Heaps, Jaime Slaughter, and Elizabeth McCloskey. Defendants Plex Systems, Inc. and Plex Systems Holdings, Inc. (collectively, "Plex") appeared through their counsel, Richard Horvath and Matthew Williams. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a securities case. Plaintiffs bring this suit against Plex for alleged violations of the federal Exchange Act and related state law claims.

Plaintiffs are both former executives of Plex. Blessing was Plex's CEO from 2012 to 2017. Complaint, Dkt. 2-4, ¶¶ 21-23. Rayani started as Plex's director of strategy in 2014, and was promoted to vice president before leaving Plex in 2018. Id., ¶¶ 24-25.

Plex is a "software as a service" business that provides a "cloud-based enterprise resource planning program to manufacturing companies." Dkt. 2-4, ¶ 16. Plex creates

software to help manufacturing companies manage their factories' operations.  Plex markets its product as "connect[ing] every manufacturing operation in the cloud for maximum efficiency, productivity and visibility, while supporting continuous innovation." Id.

Blessing and Rayani both received Plex stock (or stock options) as part of their compensation.  Blessing owned 2,333,493 shares of Plex common stock when he left Plex, and Rayani exercised options to buy 200,000 shares of Plex common stock shortly after leaving Plex.  Dkt. 2-4, ¶¶ 23, 25.

On March 10, 2021, Plex's CFO sent an email to Plex shareholders (including Blessing and Rayani) "to let [them] know that Plex will launch a tender offer for its outstanding common shares."  Dkt. 2-4, ¶ 26.  A tender offer is an opportunity for shareholders to sell their stock back to the company at a specific price during a specific window of time.  Id., ¶ 26.  Because Plex is a privately held company, a tender offer is one of few chances that shareholders have to liquidate their shares.  Id., ¶ 26.

Plex announced that the tender offer would run through April 8, 2021.  Dkt. 2-4, ¶ 28.  Plex offered to buy back shares for $3.21 each.  Id., ¶ 29.  Plex informed shareholders that there were 234,501,126.8911 total shares of Plex stock, which put the "enterprise value" of Plex as a company at approximately $750 million.  Id., ¶ 29.

In the tender offer documents, Plex also stated that "the Company is not the subject of any acquisition offers and is not seeking or negotiating for further investment at this time."  Dkt. 2-4, ¶ 30.

Plaintiffs' complaint alleges that both of those statements – the valuation of Plex, and the statement regarding acquisition/investment – were knowingly false.  This order will refer to the two challenged statements as (1) the "valuation statement," and (2) the "acquisition/investment" statement.

Plaintiffs allege that Plex's actual valuation was over $2 billion, and allege that, at the time of the tender offer, "its acquisition by an industrial giant was imminent."  Dkt. 2-4, ¶ 31.  To support those allegations, plaintiffs point to the acquisition of Plex by "industrial

2

1

2

3

4

5

6

7

8

giant" Rockwell Automation for $2.22 billion, which was announced in June 2021.  Id., ¶ 34.  Plaintiffs allege that "[s]ince at least early 2020, Plex had been discussing a potential partnership with Rockwell Automation," and they "continued to discuss an acquisition in 2020 and 2021."  Id., ¶¶ 32-33.  Plaintiffs further allege that, "in March and April 2021, at the same time the tender offer was pending, Plex and Rockwell were in the midst of discussions about an acquisition of the former by the latter."  Id., ¶ 33.  Plaintiffs further point to a June 25, 2021 investor call, during which "the companies revealed that Rockwell had been looking at Plex for 'quite some time.'"  Id., ¶ 34.

9

10

11

12

13

Plaintiffs allege that they "accepted Plex's tender offer, relying on Plex's representations about the company's valuation and acquisition potential."  Dkt. 2-4, ¶ 36.  Plaintiffs further allege that neither of them "would have sold their shares had they known that Rockwell was attempting to purchase Plex," or "that Plex was worth far more than $750 million."  Id., ¶ 37.

14

15

16

17

Blessing sold 2,333,493 shares and received $7,490,512.53.  Dkt. 2-4, ¶ 36.  He alleges that, if he had not relied upon Plex's representation and had instead held onto his Plex shares until the acquisition was announced, his stake would be worth more than $22 million.  Id., ¶ 37.

18

19

20

21

Rayani sold 200,000 shares and received $642,000.  Dkt. 2-4, ¶ 36.  He alleges that, if he had not relied upon Plex's representation and had instead held onto his Plex shares until the acquisition was announced, his stake would be worth close to $1.9 million.  Id., ¶ 37.

22

Plaintiffs allege the following eight causes of action:

23

(1) violation of § 10(b) and Rule 10b-5 of the Exchange Act,

24

(2) violation of Exchange Act § 14(e),

25

(3) fraud,

(4) fraudulent concealment,

26

(5) fraud in the inducement,

27

(6) negligent misrepresentation,

28

(7) unjust enrichment, and

(8) breach of contract.

All of the causes of action are based on the same two central allegations regarding (1) the valuation statement and (2) the acquisition/investment statement.  Specifically, plaintiffs allege that "Plex made material misrepresentations and omissions in representing the company's valuation and in indicating that its acquisition was not imminent."  See, e.g., Dkt. 2-4, ¶¶ 40, 47, 40, 56, 62, 68.

As to the breach of contract claim, plaintiffs further allege that Plex's tender offer "included a warranty that the stock price reflected its fair market value and represented that Plex was not the subject of any acquisition offers."  Id., ¶ 80.

Plex now moves to dismiss the complaint in its entirety.  Plex also moves to strike plaintiffs' claims for equitable relief.

In addition to the motion to dismiss/strike, there are also a total of four motions to seal pending:

(1) plaintiff's motion to seal portions of the complaint (Dkt. 2),

(2) Plex's motion to seal portions of the motion to dismiss and attached exhibits (Dkt. 24),

(3) plaintiffs' motion to seal portions of the opposition to the motion to dismiss (Dkt. 28), and

(4) Plex's motion to seal the reply and attached exhibits (Dkt. 38).

## DISCUSSION

**A.    Legal standard**

1.    Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

However, legally conclusory statements, not supported by actual factual

allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The

allegations in the complaint "must be enough to raise a right to relief above the

speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations

and quotations omitted).  A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

entitled to relief.'"  Id. at 679.

> ## 2.    Federal Rule of Civil Procedure 9(b)

Generally, plaintiffs in federal court are required to give a short, plain statement of

the claim sufficient to put the defendants on notice.  Fed. R. Civ. P. 8.  In actions alleging

fraud, however, "the circumstances constituting fraud or mistake shall be stated with

particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), the complaint must allege specific

facts regarding the fraudulent activity, such as the time, date, place, and content of the

alleged fraudulent representation, how or why the representation was false or misleading,

and in some cases, the identity of the person engaged in the fraud.  In re GlenFed Sec.

Litig., 42 F.3d 1541, 1547-49 (9th Cir. 1994).  Because the plaintiff must set forth what is

false or misleading about a particular statement, he must do more than simply allege the

neutral facts necessary to identify the transaction; he must also explain why the disputed

statement was untrue or misleading at the time it was made.  Yourish v. California

Amplifier, 191 F.3d 983, 992-93 (9th Cir. 1999).

> ## 3.    Claims under the 1934 Securities Exchange Act

Section 10(b) of the Securities Exchange Act of 1934 provides, in part, that it is

unlawful "to use or employ in connection with the purchase or sale of any security

registered on a national securities exchange or any security not so registered, any

manipulative or deceptive device or contrivance in contravention of such rules and

regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).

Rule 10b-5 makes it unlawful for any person to use interstate commerce:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In order to state a claim under § 10(b) of the 1934 Act and Rule 10b-5, a plaintiff must allege (a) the use or employment of a manipulative or deceptive device or contrivance; (2) scienter, i.e., wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to as "transaction causation;" (5) economic loss; and (6) loss causation, i.e., a causal connection between the manipulative or deceptive device or contrivance and the loss. Simpson v. AOL Time Warner, 452 F.3d 1040, 1047 (9th Cir. 2006); see also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). The misstatement or omission complained of must have been misleading; in the case of an omission, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic, Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988).

4.    The Private Securities Litigation Reform Act

It has long been established that claims brought under Rule 10b-5 and § 10(b) must meet the particularity requirements of Rule 9(b). See In re Daou Sys. Inc. Sec. Litig., 411 F.3d 1006, 1014 (9th Cir. 2005). In addition, the enactment of the Private Securities Litigation Reform Act ("PSLRA") in 1995 altered pleading requirements for actions brought under the 1934 Exchange Act. Id.

The PSLRA was enacted to establish uniform and stringent pleading requirements for securities fraud actions, and "to put an end to the practice of pleading 'fraud by hindsight.'" In re Silicon Graphics, Inc., 183 F.3d at 970, 988 (9th Cir. 1999). The PSLRA heightened the pleading requirements in private securities fraud litigation by requiring that the complaint plead both falsity and scienter with particularity. In re Vantive

United States District Court
Northern District of California

1  Corp. Sec. Litig., 283 F.3d 1079, 1084 (9th Cir. 2002).  If the complaint does not satisfy

2  these pleading requirements, the court, upon motion of the defendant, must dismiss the

3  complaint.  15 U.S.C. § 78u-4(b)(3)(A).

4  Under the PSLRA – whether alleging that a defendant "made an untrue statement

5  of a material fact" or alleging that a defendant "omitted to state a material fact necessary

6  in order to make the statements made, in the light of the circumstances in which they

7  were made, not misleading" – the complaint must specify each statement alleged to have

8  been false or misleading, specify the reason or reasons why each such statement is

9  misleading, and, if an allegation regarding the statement or omission is made on

10  information and belief, state with particularity all facts on which that belief is formed.  15

11  U.S.C. § 78u-4(b)(1).[1]  If the challenged statement is not false or misleading, it does not

12  become actionable merely because it is incomplete.  In re Vantive, 283 F.3d at 1085;

13  Brody v. Transitional Hosp. Corp., 280 F.3d 997, 1006 (9th Cir. 2002).

14  In addition – whether alleging that a defendant "made an untrue statement of

15  material fact" or alleging that a defendant "omitted to state a material fact" – the complaint

16  must, with respect to each alleged act or omission, "state with particularity facts giving

17  rise to a strong inference that the defendant acted with the required state of mind."  15

18  U.S.C. § 78u-4(b)(2).  In the Ninth Circuit, the required state of mind is "deliberate or

19  conscious recklessness."  In re Silicon Graphics, 183 F.3d at 979.

20  Because falsity and scienter in securities fraud cases are generally strongly

21  inferred from the same set of facts, the Ninth Circuit has incorporated the falsity and

22  scienter requirements into a single inquiry.  No. 84 Employer-Teamster Joint Council

23  Pension Trust Fund v. America West Holding Co., 320 F.3d 920, 932 (9th Cir. 2003).  In

24  addition, when considering whether plaintiffs have shown a strong inference of scienter,

25  "the district court must consider all reasonable inferences to be drawn from the

26

27

28  [1] Matters that are not alleged on personal knowledge are considered to be alleged on
    information and belief.  See In re Vantive, 283 F.3d at 1085 n.3.

1    allegations, including inferences unfavorable to the plaintiffs."  Gompper v. VISX, Inc.,

2    298 F.3d 893, 897 (9th Cir. 2002) (noting the "inevitable tension . . . between the

3    customary latitude granted the plaintiff on a [12(b)(6)] motion to dismiss . . . and the

4    heightened pleading standard set forth under the PSLRA).  In other words, the court must

5    consider all the allegations in their entirety in concluding whether, on balance, the

6    complaint gives rise to the requisite inference of scienter.  Id.

7          5.    Motions to strike

8          Rule 12(f) provides that the "court may strike from a pleading an insufficient

9    defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ.

10   P. 12.  The function of a motion to strike is to "avoid the expenditure of time and money

11   that must arise from litigating spurious issues by dispensing with those issues prior to

12   trial."  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (citation

13   and internal quotation marks omitted).  To determine whether to grant a motion to strike

14   under Rule 12(f), the court considers whether the matter the moving party seeks to have

15   stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or

16   (5) scandalous.  Id. at 973–74.

17         Motions to strike are not favored and "should not be granted unless it is clear that

18   the matter to be stricken could have no possible bearing on the subject matter of the

19   litigation."  Colaprico v. Sun Microsystem, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

20   When a court considers a motion to strike, it "must view the pleadings in a light most

21   favorable to the pleading party."  In re 2TheMart.com, Inc. Sec. Litig., 114 F Supp. 2d

22   955, 965 (C.D. Cal. 2000).

23   **B.    Legal Analysis**

24         As discussed above, while this case involves eight causes of action, each with its

25   own separate set of elements, all of them involve the same basic premise – Plex made

26   two material misrepresentations or omissions: (1) representing the company's valuation

27   at approximately $750 million, and (2) indicating that its acquisition was not imminent.

28   See, e.g., Dkt. 2-4, ¶ 40.

United States District Court
Northern District of California

1    While Plex seeks dismissal of all eight causes of action asserted by plaintiffs, its

2    motion does not set forth the elements of each of those causes of action.  Instead, Plex

3    lists a "statement of issues" raised by its motion: (1) plaintiffs fail to allege "falsity," (2)

4    plaintiffs fail to allege "materiality," (3) plaintiffs fail to allege "reliance," (4) plaintiffs fail to

5    allege "scienter," (5) a claim of unjust enrichment is unavailable as a matter of law, (6)

6    plaintiffs' breach of contract claim is precluded by a contractual release provision, and (7)

7    plaintiffs' prayers for equitable relief should be dismissed/stricken because an adequate

8    remedy is available at law.  Dkt. 24-4 at 1-2.

9    This order will first briefly go through the various causes of action and their

10   elements, and will then discuss the overarching issues raised by Plex's motion.

11       1.    First cause of action - § 10(b) and Rule 10b-5 of the Exchange Act

12   In order to state a claim under § 10(b) of the 1934 Act and Rule 10b-5, a plaintiff

13   must allege (1) a misrepresentation or omission (i.e., "falsity"), (2) that is material, (3)

14   made with scienter, i.e., a wrongful state of mind, (4) in connection with the sale of a

15   security, (5) with reliance upon the misrepresentation/omission, and (6) where there is an

16   economic loss caused by the misrepresentation/omission.  Dura Pharmaceuticals, 544

17   U.S. at 341-42.

18   As to this cause of action, Plex agues that plaintiffs have failed to adequately

19   allege falsity, materiality, reliance, and scienter.

20       2.   Second cause of action – Exchange Act § 14(e)

21   Section 14(e) of the Exchange Act is specifically applicable to tender offers.

22   Specifically, it makes it unlawful to "make any untrue statement of a material fact or omit

23   to state any material fact necessary in order to make the statements made, in the light of

24   the circumstances under which they are made, not misleading, or to engage in any

25   fraudulent, deceptive, or manipulative acts or practices, in connection with any tender

26   offer or request or invitation for tenders."  15 U.S.C. § 78n(e).

27   Section 14(e) had generally been interpreted to impose the same requirements as

28   a 10b-5 claim.  However, in 2018, the Ninth Circuit made clear that "section 14(e)

United States District Court
Northern District of California

1  requires a showing of negligence, as opposed to scienter." Varjabedian v. Emulex Corp.,

2  888 F.3d 399, 407-08 (9th Cir. 2018).  In so ruling, the Ninth Circuit disagreed with other

3  circuits which have imposed a scienter requirement.  Under Ninth Circuit case law, a

4  plaintiff need only allege that defendants should have been aware of the statement's

5  falsity, rather than alleging that defendants knew that the statement was false.

6         As to this cause of action, Plex argues that plaintiffs have failed to adequately

7  allege falsity and materiality.  Plex appears to concede that the reliance and scienter

8  requirements do not apply to this cause of action.  Dkt. 24-4 at 19, 20.

9         3.  Third cause of action – fraud

10        The elements of a cause of action for fraud are: (1) misrepresentation (false

11  representation, concealment, or nondisclosure). (2) knowledge of falsity (or 'scienter'), (3)

12  intent to defraud, i.e., to induce reliance; (4) justifiable reliance, and (5) resulting damage.

13  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009).

14        While Plex's motion does not specifically address this cause of action or its

15  elements, its overarching arguments about falsity, materiality, reliance, and scienter all

16  apply to this claim.

17        4.  Fourth cause of action – fraudulent concealment

18        A state-law claim for fraudulent concealment has the following elements:

19  (1) concealment or suppression of a material fact, (2) by a defendant with a duty to

20  disclose the fact to the plaintiff, (3) the defendant intended to defraud the plaintiff by

21  intentionally concealing or suppressing the fact, (4) the plaintiff was unaware of the fact

22  and would not have acted as he or she did if he or she had known of the concealed or

23  suppressed fact, and (5) plaintiff sustained damage as a result of the concealment or

24  suppression of the fact.  Hambrick v. Healthcare Partners Medical Group, Inc., 238

25  Cal.App.4th 124, 162 (2015).

26        While Plex's motion does not specifically address this cause of action or its

27  elements, its overarching arguments about falsity, materiality, reliance, and scienter all

28  apply to this claim.

5.   <u>Fifth cause of action – fraud in the inducement</u>

Fraud in the inducement is a subset of the tort of fraud, and has the same elements but also requires that the "defendant fraudulently induced the plaintiff to enter into the contract."  <u>Engalla v. Permanente Med. Group, Inc.</u>, 15 Cal.4th 951, 973-74 (1997).

Again, Plex's motion does not address this cause of action specifically, but its overarching arguments on falsity, materiality, reliance, and scienter all apply to this claim.

6.   <u>Sixth cause of action – negligent misrepresentation</u>

The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.  <u>Apollo Capital Fund, LLC v. Roth Capital Partners, LLC</u>, 158 Cal.App.4th 226, 243 (2007).

Again, Plex's motion does not address this claim specifically, but plaintiffs' opposition points out that the scienter requirement does not apply to this claim, and Plex appears to concede as much in its reply.  So, while the overarching arguments about falsity, materiality, and reliance do apply, the scienter arguments do not.

7.   <u>Seventh cause of action – unjust enrichment</u>

Under California law, the elements of unjust enrichment are: (1) receipt of a benefit, and (2) unjust retention of the benefit at the expense of another.  <u>Lectrodryer v. SeoulBank</u>, 77 Cal.App.4th 723, 726 (2000).

Plex's threshold argument as to this claim is that it is precluded by the breach of contract claim and not viable as a standalone claim.  However, while there had been a split among California courts as to whether an unjust enrichment claim was a standalone cause of action, the Ninth Circuit observed in 2017 that "the California Supreme Court . . . clarified California law, allowing an independent claim for unjust enrichment to proceed in an insurance dispute."  <u>Bruton v. Gerber Prod. Co.</u>, 703 F.App'x 468, 470 (9th Cir. 2017) (citing <u>Hartford Casualty Insurance Co. v. J.R. Marketing, L.L.C.</u>, 61 Cal.4th 988, 1000

1 (2015)).  Thus, the court will not dismiss the unjust enrichment claim as a matter of law.

2 Plex's other argument as to this claim is that plaintiffs "fail to plead falsity or

3 materiality."  Dkt. 24-4 at 23.  Plex's motion appears to concede that the reliance and

4 scienter arguments do not apply to this claim.  See Dkt. 24-4 at 19, 20.

5        8.  Eighth cause of action – breach of contract

6 The elements of a cause of action for breach of contract are (1) the existence of

7 the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's

8 breach, and (4) the resulting damages to plaintiff.  Oasis West Realty, LLC v. Goldman,

9 51 Cal.4th 811, 821 (2011).

10 Plex's threshold argument for this claim is that there was no breach of the contract

11 because all of the warranties it made were true, and even if there was a breach, any relief

12 is barred by the contract's release provision.

13 Plaintiffs' argument is that any release provision was itself obtained by fraud and is

14 thus invalid.

15 Plaintiffs are correct that the outcome of this claim depends on the resolution of

16 the other issues raised by Plex's motion.  If plaintiffs can successfully state a claim for

17 fraud, then the contractual release provision could indeed be invalid.

18 Plex also argues that plaintiffs have failed to allege falsity and materiality, but does

19 not argue that reliance or scienter are elements of this claim.  See Dkt. 24-4 at 19, 20.

20        9.  Overarching arguments re falsity, materiality, reliance, and scienter

21 The court will now address the substance of Plex's overarching arguments as to

22 falsity, materiality, reliance, and scienter.  As an initial matter, each of Plex's overarching

23 arguments is based at least in part on various disclaimers made in the tender offer

24 documents.  Plex groups these disclaimers into four categories.

25 Plex calls the first category the "no fair value disclaimers," and it includes

26 statements such as:

27 - "No representation is made by the company that the price is fair to you.  The price may be less or more than the actual fair market value…"

28

- "None of the company, its management or its board of directors or any of their respective agents or representatives is making any representation that the price is fair to you."
- "The price being offered by the company may not represent the fair market value of the shares of common stock"

Dkt. 24-4 at 7-8.

The second category of disclaimers is the "future sale disclosure." Plex cites to these general statements about the possibility of future sales:

- "In the future, a market may develop for the company's common stock…"
- "The company may pursue an initial public offering or other liquidity event at any time…"

Dkt. 24-4 at 8.

The third category of disclaimers is the "no future higher price warning." Plex cites various statements telling shareholders that they would lose any opportunity to sell the stock for a higher price in the future. See Dkt. 24-4 at 8-9.

The fourth and final category of disclaimers is called the "asymmetrical information disclosures," and it covers statements made by Plex to shareholders that "we have information regarding our business and the value of our common stock that may not be known to you." Dkt. 24-4 at 10. Plex argues that "plaintiffs acknowledged this informational asymmetry when they agreed to sell their shares." Id.

Falsity

Plex first argues that plaintiffs have failed to allege falsity as to either the valuation statement or the acquisition/investment statement.

The court will start with the valuation allegations. As discussed above, these allegations stem from the tender offer price of $3.21 per share, which, combined with the approximately 235 million shares, resulted in a company value (or enterprise value) of approximately $750 million. Plaintiffs' key allegation is that, when that valuation is viewed in conjunction with the $2.22 billion purchase price paid by Rockwell in June 2021, the most reasonable inference is that the valuation was false.

Plex first points to the "no fair market value" disclaimers," arguing that they

1   essentially put plaintiffs on notice that the actual value of the shares might be more than

2   the offer price.  Dkt. 24-4 at 14.  However, this argument is, in substance, more of a

3   reliance argument than a falsity argument.  The argument is that a reasonable investor

4   would put less credence in the valuation after reading all of the cautions and caveats

5   contained in the disclaimers.  In the court's view, that is not a falsity argument, because it

6   is not an argument that the $750 million valuation was actually an accurate valuation –

7   rather, it is an argument that the $750 million figure was unreliable due to the disclaimers.

8   So, to the extent that the "no fair value" disclaimers are relevant, the court will address

9   them in the context of reliance.

10       Next, Plex points to the time-distance between the valuation and the tender offer,

11   arguing that the valuation was made as of November 2020, not as of the date of the

12   tender offer in March 2021.  Dkt. 38-3 at 5.

13       However, Plex's argument regarding the time-distance between November 2020

14   and March 2021 is undercut by the tender offer documents themselves.  In the

15   documents, Plex stated that it was using the November 2020 valuation to assess the

16   "current fair market value" in March 2021.  Dkt. 28-4 at 10.

17       Here's what is clear from the complaint: first, in November 2020, a valuation firm

18   calculated the company's value as $750 million, and then, in June 2021, Rockwell agreed

19   to pay $2.22 billion for the company.  And generally, a purchase price is regarded as the

20   fair market value of a company, because it represents what someone – presumed to be a

21   reasonable purchaser – was willing to pay.

22       To square those two numbers, there are three possibilities: (1) both figures are

23   accurate, and the company simply tripled in value between November 2020 and June

24   2021, (2) the November 2020 valuation of $750 million was inaccurate, or (3) the June

25   2021 valuation by Rockwell of $2.22 billion was inaccurate.  If there were any facts

26   supporting the inference of (1), the court would be willing to give them credence, but

27   there are none.  So that leaves (2) and (3).  At this stage of the case, before discovery,

28   there is no evidence in the record showing the rationale underlying those two valuations.

United States District Court
Northern District of California

14

1   As a result, the court has no basis to conclude that the methodology of one was better

2   than the other.

3          But here's what is known – for the latter figure, someone actually paid the $2.22

4   billion, which suggests that the figure has some merit.  In contrast, Plex expressed no

5   willingness to actually sell its company for $750 million, which means the $750 million

6   figure was, for practical purposes, just a paper figure.  Based on that, the most

7   reasonable inference at this stage of the case is plaintiffs have sufficiently alleged that

8   the $750 million figure (or more specifically, the $3.21/share figure) was false or

9   misleading.  Discovery might well show that (1) or (3) is true instead, but at this stage of

10  the case, the court concludes that plaintiffs have adequately alleged the falsity of the

11  valuation statement for purposes of all asserted claims.

12         The court now turns to issue of whether plaintiffs have adequately alleged falsity

13  as to the acquisition/investment statement.  As mentioned above, the key statement

14  made by Plex in the tender offer documents is "the Company is not the subject of any

15  acquisition offers and is not seeking or negotiating for further investment at this time."

16         Plex's primary argument is that plaintiffs have not adequately alleged that the

17  statement is false because they have not alleged particularized facts regarding the state

18  of Plex/Rockwell negotiations as of March 11, 2021, the date of the tender offer.

19  However, the court agrees with the argument made in plaintiffs' opposition that the "who,

20  what, where, when, how" requirements apply to the misconduct itself, i.e., the allegedly

21  false/misleading statements.  Moreover, the details of those facts cannot reasonably be

22  uncovered without discovery, and plaintiffs have alleged facts – namely, the timing of the

23  acquisition – that allow for the reasonable inference that Plex and Rockwell were already

24  negotiating a deal when the tender offer was made.

25         Specifically, the complaint alleges that Plex and Rockwell had been discussing an

26  acquisition "[s]ince at least early 2020," and "continued to discuss an acquisition in 2020

27  and 2021."  Dkt. 2-4, ¶¶ 32-33.  The complaint further alleges that "in March and April

28  2021, at the same time the tender offer was pending, Plex and Rockwell were in the

United States District Court
Northern District of California

1   midst of discussions about an acquisition of the former by the latter." Id., ¶ 33.  These

2   allegations are based on information and belief, which is permitted at this stage of the

3   case.  See, e.g., In re Vantive, 283 F.3d at 1085, n.3.

4   The complaint's allegations are strengthened by the unreasonableness of the

5   opposing inference, which is that Rockwell went from a standing start in April 2021 to a

6   $2.22 billion purchase in June 2021.  Moreover, as the complaint points out, Rockwell

7   stated directly after the acquisition that it had been looking into acquiring Plex for "quite

8   some time."  Dkt. 2-4, ¶ 34.  While Plex argues that Rockwell could have been looking

9   into Plex without any involvement by Plex, given that Plex was a privately-held company

10  before the acquisition, it is far more reasonable to infer that Rockwell's pursuit of Plex for

11  "quite some time" was done so with Plex's awareness.

12  Plex attempts to defend the quick turnaround time by arguing that the deal was

13  announced "amidst a period of record-breaking deal-making activity," but Plex offers no

14  explanation as to why the quantity of deals being done would affect the speed with which

15  this deal was done.

16  Again, discovery may prove plaintiffs' inference to be false, in which case Plex

17  would be entitled to summary judgment; but for purposes of this motion to dismiss, the

18  court concludes that plaintiffs have adequately alleged falsity as to the

19  acquisition/investment statement.

20  Thus, the court concludes that plaintiffs have adequately alleged falsity as to both

21  the valuation statement and the acquisition/investment statement.

22  Materiality

23  Plex next argues that plaintiffs have failed to allege materiality.  Plex again points

24  to its categories of disclaimers – specifically, the "no fair value disclaimer," the "no future

25  higher price warning," and the "future sale disclosures" – arguing that they adequately

26  "put plaintiffs on notice (1) that Plex could pursue a liquidity event, including a sale of the

27  company, at any time, and (2) that if they tendered, plaintiffs would be unable to

28  participate in the potential upside of such an event."  Plex argues that the "total mix of

16

1    information" given to plaintiffs was sufficient, and that plaintiffs cannot identify what

2    additional facts should have been disclosed.

3         In the court's view, plaintiffs have adequately alleged materiality in this case.  As to

4    valuation, of course the valuation of a company's share price is material to a tender offer

5    – it is arguably the most material part of the offer.  Any disclaimer might undercut falsity

6    or reliance, but it does not undercut materiality.

7         The court has a similar view with regard to the acquisition/investment statement.

8    Even if the acquisition/investment status of the company might not otherwise be material

9    to a tender offer, it became material once Plex decided to mention it in the tender offer

10   documents.  The Ninth Circuit has made clear that, even if a company has no obligation

11   to address a topic, once it chooses to do so, it must do so truthfully.  See Berson v.

12   Applied Signal Tech., 527 F.3d 982, 984 (9th Cir. 2008); Khoja v. Orexigen Therapeutics,

13   Inc., 899 F.3d 988, 1010 (9th Cir. 2018).

14        Plex further argues that plaintiffs do not identify "what additional facts about the

15   alleged discussions with Rockwell as of March 11, 2021 should have been disclosed," but

16   that question has an easy answer – plaintiffs allege that Plex should have disclosed the

17   existence of negotiations with Rockwell, rather than issuing a blanket denial.  As

18   discussed above, discovery may reveal that Plex is correct and that there were no

19   negotiations to report – but as mentioned above, the complaint directly alleges that

20   negotiations were indeed ongoing during the tender offer period, and those allegations

21   are taken as true at this stage of the case.  Thus, the court concludes that plaintiffs have

22   adequately alleged materiality as to the acquisition/investment statement.

23        Thus, the court further concludes that plaintiffs have adequately pled materiality for

24   both the valuation statement and the acquisition/investment statement as to all claims.

25        Reliance

26        The next issue is reliance, and Plex bases this argument on the various

27   disclaimers made in the tender offer documents.  As to the valuation statement, Plex

28   relies primarily on the "no fair value disclaimers" such as these:

- "No representation is made by the company that the price is fair to you.  The price may be less or more than the actual fair market value…"

- "None of the company, its management or its board of directors or any of their respective agents or representatives is making any representation that the price is fair to you."

- "The price being offered by the company may not represent the fair market value of the shares of common stock"

Dkt. 24-4 at 7-8.

These disclaimers must be read in conjunction with the simultaneous statement that "the Company has engaged an independent valuation firm to determine the current fair market value" of the stock, and that the "valuation firm determined that the fair market value of the Common Stock, as of November 30, 2020, was $3.21 per share."

In the court's view, those statements directly contradict the disclaimers.  In the disclaimers, Plex says the share price may not represent the fair market value, but Plex also said that it engaged a valuation firm precisely for the purpose of determining the fair market value of the stock, which was determined to be $3.21.

That said, the court understands that companies can and will offer a price that is lower than what it values the stock to be – that is why Plex decided to buy back the stock in the first place, because it believed the buyback would be a profitable financial decision. But the issue here is the significant disparity between the purchase price during the tender offer and the effective purchase price in connection with the merger so soon after the tender offer.

Plex also points to the other categories of disclaimers – namely, the future sale disclosures, the no future higher price warning, and the asymmetrical information disclosures – as precluding reliance.

In the court's view, the disclaimers account for the possibility that the shares might be worth more than $3.21, but do not account for the possibility that they would be worth three times as much in just two months' time.

Plex cites the Ninth Circuit's opinion in Atari Corp. v. Ernst & Whitney, 981 F.2d 1025, 1030 (9th Cir. 1992) for the proposition that an investor cannot simply "close his

eyes to a known risk," but plaintiffs argue that <u>Atari</u> does not apply because there was no known risk that plaintiffs ignored.  In fact, Plex had superior knowledge of any risk – as evidenced by their "asymmetrical information" disclosure that "we have information regarding our business and the value of our common stock that may not be known to you."  Dkt. 24-4 at 10.  And as plaintiffs point out, "[n]o reasonable reader of the offering documents would interpret the asymmetrical information disclosure as revealing that the other statements in the documents – like the no acquisition and valuation statements, were false."  Dkt. 28-4 at 16, n.9.

Overall, the court concludes that plaintiffs have adequately alleged that they relied on the valuation statement.

Turning to the acquisition/investment statement, Plex again points to the many disclaimers, specifically the "future sale" and the "no future higher price" disclaimers.  The analysis here is somewhat related to the "falsity" analysis, because the disclaimers only disclose the possibility of unnamed future transactions, they do not preclude reliance on the present-time assertion that Plex, as of March 11, 2021, was not negotiating or seeking investment, which plaintiffs allege was false because of the negotiations with Rockwell.  In other words, it was reasonable for plaintiffs to rely on Plex's statement regarding the lack of investment negotiations as of March 11, 2021, because none of the disclaimers undercut it.  For that reason, the court concludes that plaintiffs have adequately alleged their reliance on the acquisition/investment statement.

Thus, the court concludes that plaintiffs have adequately alleged reliance for both the valuation statement and the acquisition/investment statement as to all claims.

Scienter

The next issue is scienter.  As mentioned above, in the legal standard section, the Ninth Circuit has said that the falsity and the scienter requirements have substantial overlap.  <u>See</u> <u>No. 84 Employer-Teamster Joint Council Pension Trust Fund</u>, 320 F.3d at 932.  Analyzing the two elements together is especially appropriate where the allegations are "so important to the company that it was absurd to suggest" that management would

1    not discuss them.  See Berson, 527 F.3d at 988.

2          As applied to this case, it would be "absurd" to conclude that Plex's CFO was

3    unaware of negotiations to sell the entire company, or that he was unaware that the

4    company was actually worth three times its valuation.

5          And, while Plex may disprove plaintiffs' theory as to their potential motive to

6    lowball shareholders, the alleged motive is a plausible one.  Moreover, the argument that

7    the tender offer to plaintiffs represented just 1% of all Plex stock (and would thus be too

8    small an amount to motivate a financial crime) is a red herring because Plex did not make

9    the tender offer just to these two plaintiffs, it made the offer to all shareholders.  Also,

10   even just taking plaintiff Blessing, Plex potentially paid $15 million less than it would have

11   paid after the acquisition, which is more than a sufficient motive, even if it does represent

12   just 1% of the company.

13         Thus, the court concludes that plaintiffs have adequately alleged scienter as to

14   both the valuation statement and the acquisition/investment statement.

15         Accordingly, as to the overarching arguments made by Plex as to falsity,

16   materiality, reliance, and scienter, the court concludes that plaintiffs have adequately

17   alleged all elements as to all asserted claims.

18         Other than challenging falsity, materiality, reliance, and scienter, the only

19   remaining challenges were that (1) unjust enrichment is unavailable as a matter of law,

20   and (2) breach of contract is precluded by the release, but as discussed above, both

21   arguments are rejected by the court.

22         Accordingly, Plex's motion to dismiss is DENIED.

23         Finally, Plex requests to strike the prayers for equitable relief.  As mentioned

24   above in the legal standard section, motions to strike are not favored and should not be

25   granted "unless it is clear that the matter to be stricken could have no possible bearing on

26   the subject matter of the litigation."  Plex has not met this high standard, and thus, the

27   motion to strike is DENIED.

28

United States District Court
Northern District of California

20

1           10.    <u>Motions to seal</u>

2           As mentioned above, the parties have filed a total of four motions to seal, seeking

3    to seal the complaint, motion papers, and related exhibits.

4           "There is a general principle in favor of public access to federal court records."

5    <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597 (1978). "The proponent of sealing

6    bears the burden with respect to sealing.  A failure to meet that burden means that the

7    default posture of public access prevails."  <u>Kamakana v. City & City of Honolulu</u>, 447 F.3d

8    1172, 1182 (9th Cir. 2006).

9           The Ninth Circuit has recognized that two different standards may apply when a

10   request to seal a document is made in connection with a motion—namely the "compelling

11   reasons" standard or the "good cause" standard.  <u>Ctr. For Auto Safety v. Chrysler Grp.,</u>

12   <u>LLC</u>, 809 F.3d 1092, 1096-97 (9th Cir. 2016).  The compelling reasons standard applies

13   to any sealing request made in connection with a motion that is "more than tangentially

14   related to the merits of a case."  <u>Id.</u> at 1101.

15          Under that standard, a court may seal a record only if it finds a "compelling

16   reason" to support such treatment and articulates "the factual basis for its ruling, without

17   relying on hypothesis or conjecture."  <u>Ctr. For Auto Safety</u>, 809 F.3d at 1096-97.  If it has

18   made such finding, the court "must then conscientiously balance the competing interests

19   of the public and the party who seeks to keep certain judicial records secret."  <u>Id.</u> at 1097.

20   Factors relevant to that balancing test include the public interest "in understanding the

21   judicial process," <u>Pintos v. Pac. Creditors Ass'n</u>, 605 F.3d 665, 679 n.6 (9th Cir. 2010), as

22   well as the volume of material sought to be sealed, <u>Algarin v. Maybelline, LLC</u>, 2014 WL

23   690410, at *3 (S.D. Cal. Feb. 21, 2014).

24          The Ninth Circuit has expressly acknowledged that "[w]hat constitutes a

25   'compelling reason' is best left to the sound discretion of the trial court."  <u>Ctr. for Auto</u>

26   <u>Safety</u>, 809 F.3d at 1097.  "Examples include when a court record might be used to

27   gratify private spite or promote public scandal, to circulate 'libelous' statements, or 'as

28   sources of business information that might harm a litigant's competitive standing.'"  <u>Id.</u>

United States District Court
Northern District of California

United States District Court
Northern District of California

As stated at the hearing, to the extent that the parties seek to seal any portion of the complaint or the briefs, the motions to seal are DENIED.  Further, while plaintiffs purport to seek the sealing of "private financial and personal information," they seek to conceal "the amount plaintiffs received through the tender offer."  Plaintiffs' argument goes too far.  While the court would approve the sealing of personal bank account information or similarly sensitive information, it will not issue a blanket order sealing any reference to the fact that plaintiff Blessing received $7 million through his sale of Plex stock.

Nor will the court seal the tender offer documents.[2]  First, the tender offer documents contain the information that goes to the very essence of this case.  And second, the tender offer documents are heavily quoted throughout the complaint and the briefing on Plex's motion, and as the court already made clear, the court will not seal any portion of the pleadings.

Accordingly, the parties' motions to seal are DENIED, without prejudice only as to the sealing of any truly personal financial information, such as bank account information.

## CONCLUSION

For the reasons stated above, Plex's motion to dismiss (Dkt. 25) is DENIED, its motion to strike is DENIED, and the parties' motions to seal (Dkt. 2, 24, 28, 38) are DENIED without prejudice only as to the sealing of personal financial information such as bank account information.

**IT IS SO ORDERED.**

Dated: December 22, 2021

_____/s/ Phyllis J. Hamilton_____
PHYLLIS J. HAMILTON
United States District Judge

---

[2] Plex also seeks judicial notice of the tender offer documents and other financial documents.  The request for judicial notice is denied.

22